# GIBBONS *v.* PELLER.


PATENTS; EVIDENCE; BURDEN OF PROOF; VARIANCE; ABANDONED EXPERIMENT; PATENTABILITY.

1. The burden of proof is on the junior party to an interference to show a reduction to practice prior to the filing date of his adversary, or a prior conception followed by due diligence in reducing to practice.

2. Where an issue in an interference case is specific, and has only been held patentable after much hesitation in the Patent Office, any oral testimony by one of the parties to show the invention to have been his must correspond in every detail with the requirements of the issue. (Citing *Blackford* v. *Wilder*, 21 App. D. C. 1.)

3. Where, in an interference case involving an improvement in buckles, it appeared that the junior party when testifying was unable to describe the invention in issue; that it was not clear, from the testimony of the party to whom he claimed to have made disclosure and who made a buckle for him, that the buckle so made embodied the invention, or that it was anything more than an experimental model in the nature of an abandoned experiment; and that the only excuse

of the junior party for a delay of three years between his alleged conception and the filing of his application was that another buckle for which he obtained patents at home and abroad was a better buckle, and he lacked the money to make an earlier application,—it was *held,* affirming a decision of the Commissioner, that the senior party was entitled to an award of priority.

4. The fact that the senior party to an interference, who had assigned his rights to another for royalties, and who had sworn to the application in interference, but who refused to testify in the proceeding when requested by his assignee, had, after his assignment and at a time when he was seeking higher royalties from his assignee, intimated to the assignee that he was not the real inventor of the issue, will not, of itself, prevent an award of priority to the senior party. (Distinguishing *Oliver* v. *Felbel*, 20 App. D. C. 255.)

No. 395.   Patent Appeals.   Submitted November 22, 1906.   Decided January 8, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Robert B. Killgore* for the appellant.

*Mr. George D. Seymour* and *Mr. Seymour D. Earle* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

It appears that the application of Stephen P. Gibbons was filed March 21, 1903, that the application of Morris Peller was filed January 8, 1902, and that all the tribunals of the Patent Office have awarded priority of invention to Peller, the senior party.   We find no error in the decision of the Commissioner of Patents upon the issue now before us.   The issue of this interference is as follows:

"1. In a rustless suspender buckle, the combination with a

frame having an upper and a lower side with an opening between the same, of a lever pivoted to the upper side of the frame in position to have its clamping edge coact with the upper edge or top of the lower side of the frame, and a piece of webbing having its lower reach attached to the lower side of the frame, and its upper reach passed from front to rear through the said opening, and engaged by the clamping edge of the lever, which deflects it over, or approximately over, the upper edge or top of the lower side of the frame.

"2. In a rustless buckle, the combination with a frame having an upper and a lower side with an opening between them, the lower side of the frame being wider than the upper side to form a finger-piece, of a lever pivoted to the smaller upper side of the frame in position to have its clamping edge coact with the upper edge or top of the wider lower side of the frame, and a piece of webbing having its lower reach attached to the lower side of the frame, and its upper reach passed from front to rear through the said opening, and engaged by the clamping edge of the lever, which deflects it over, or approximately over, the upper edge or top of the lower side of the frame, whereby the upper reach of the webbing is brought into, or approximately into, line with the lower reach of the webbing on the back of the buckle when the webbing is under draft as in use."

Of numerous parties once included in this interference, only Gibbons and Peller remain. Peller did not testify, nor is there any testimony confirming the dates of conception of invention and disclosure alleged by Peller in his preliminary statement. There are circumstances indicating that after Peller had assigned his interest he became indifferent to the rights of his assignee, the Waterbury Buckle Company. Maltby, the secretary of that company, testifies that in the fall of 1901 he corresponded with Peller, and talked with him about a "rustless buckle," and that on December 31, 1901, buckles made in accordance with Peller's disclosure were first shipped, and that the buckle exhibited to him was substantially the same as those then shipped, and this buckle embodies the issue of this interference. Thus December 31, 1901, is the date of reduction to

practice by Peller. Gibbons is the junior party, and the burden of proof is upon him, and to prevail he must prove a reduction to practice prior to the last mentioned date, or, at least, to January 8, 1902, when Peller filed his application, or a prior conception followed by due diligence in reduction to practice. Gibbons claimed that he conceived the invention in November, 1900, and that he disclosed it to M. L. and L. Rothschild then. These men were officers of the Connecticut Web Company, from which Gibbons, as manager of the Gibbons Manufacturing Company of Baltimore, bought supplies. Each of the tribunals of the Patent Office, after reviewing the testimony, conclude that Gibbons failed to make a disclosure to these persons of the specific form of buckle which is here in issue, and it is quite remarkable that although Gibbons alleges that he is the inventor, yet when he testifies, after repeated efforts he did not succeed in describing the invention in issue. His testimony is vague and indefinite upon the point, and the tribunals of the Patent Office concur that Gibbons had no conception of the invention in issue prior to the time when the first shipment of Peller buckles was made, or to the time when Peller filed his application. The testimony of M. N. Rothschild appears to be unreliable, and it is not clear that the buckle he claims to have made for Gibbons can aid Gibbons's case, for it does not appear to embody the invention in issue.

The Examiners-in-Chief say: "It is to be noted that this issue is specific and carefully drawn as to its language, and has only been held to be patentable after much discussion by the examiner and this board. Where the invention is so specific, any oral testimony must of course correspond in every detail with the requirements of the issue." See *Blackford* v. *Wilder,* 21 App. D. C. 1. And, as the Commissioner of Patents says, this issue calls for a buckle with a frame having an upper and a lower side, with an opening between the same, of a lever pivoted to the upper side of the frame in position to have its clamping edge coact with the upper edge or top of the lower side of the frame, which is not found in this "buckle of original

disclosure" produced by M. L. Rothschild. The device in issue
has a lever pivoted above the top edge of the lower side of the
frame; the lever in the buckle exhibited is pivoted to ears in
the same plane as the frame of the buckle; and it is the former
construction which produces the result of holding the web by
deflection, rather than by a clamping action. At most, this
buckle produced by Rothschild as Gibbons's original disclosure
was an experimental model put away in a drawer for years. It
was in the nature of an abandoned experiment. Gibbons has
given no explanation of his long delay in filing his application,
except that he thought the buckle on which he did obtain a patent
at home and three patents abroad was a better buckle, and he
lacked the money to make an earlier application for the inven-
tion of the issue. That other invention Gibbons understood, al-
though when repeatedly asked he repeatedly proved unable to
state intelligently what the construction here in issue is. We
agree with the tribunal of the Patent Office that Gibbons's case
wholly failed; and here discussion would end were it not that
the appellant further urges that the testimony shows that Peller
was not the inventor of the buckle shown in his application.
Here the appellant relies upon the case of *Oliver* v. *Felbel,* 20
App. D. C. 260, where Oliver, when a witness in his own behalf,
swore that he did not claim to be the inventor of the mechanism
embracing the particular combination of parts or elements speci-
fied in the issue of interference. The circumstances in this case
are different. Maltby, the secretary of the Waterbury Buckle
Company, did testify that, at one time after Peller had assigned
his application for a patent to Maltby's Company, Peller inti-
mated that he was not the real inventor of the construction
shown in his application and now involved in this interference.
It appears that Peller's brother had been the mechanic in this
instance, and the testimony indicates that Rothschild, who, with
another, first made application for this invention, and later
testified that it was Gibbons's invention, and sought to explain
the inconsistency by his former belief that the mechanic who
constructed the invention for another was the inventor, had
about this time striven to enlist Peller against Peller's assignee,

and it appears that Peller was at that time seeking a better agreement for a royalty from the Waterbury Buckle Company.

We do not find that Peller deliberately denied that he was the inventor, but we conclude that his acts and declarations and his refusal to testify at Maltby's request were part of an effort to secure better terms from his assignee. When Peller executed the application in interference he testified under oath that he was the inventor of the invention of the issue, and we do not find evidence sufficient to overcome it. The decision of the Commissioner is affirmed. The clerk of this court will certify this opinion and the proceedings in this court to the Commissioner of Patents according to law.                    *Affirmed.*